Shaw, C. J.
The court are of opinion, that the defendant is justifiable on both grounds.
Taking the whole contents of the paper together, as read before the church and congregation, and the time and the occasion, it did not impute to the plaintiff the crime of adultery, in its legal and technical sense, as an indictable offence ; but taking it in connection with other parts of the sentence of excommunication, the charge that she had violated the seventh commandment was a charge of unchaste and licentious conduct, inconsistent with her duty and moral obligations, and more especially the obligations, which she had taken upon herself, by entering into church covenant. The case of Goodrich v. Davis, 11 Met. 473, was a question of pleading, and it was held, that an imputation of violating the seventh commandment, taken in connection with various other passages in the publication, giving effect to the meaning, with proper averments and colloquia, might be taken to be a charge of adultery. This has no application to the present case.
But on the other ground, we think the result must be the same. The rights of churches to use, exercise, and enjoy all their accustomed privileges and liberties, respecting divine worship, church order and discipline, &c., are declared and secured by statutes passed at various times, and in force to the present day. St. 1799, c. 87, § 1; St. 1834, c. 183, § 1; Rev. Sts. c. 20, § 3. Amongst these powers and privileges, established by long and immemorial usage, churches have authority to deal with their members, for immoral and scandalous conduct; and for that purpose, to hear complaints, to take evidence and to decide ; and, upon conviction, to administer proper punishment by way of rebuke, censure, suspension and excommunication. To this jurisdiction, every member, by entering into the church covenant, submits, and *416 is bound by his consent. Remington v. Congdon, 2 Pick. 310, 315.
The proceedings of the church are quasi judicial, and' therefore those who complain, or give testimony, or act and vote, or pronounce the result, orally or in writing, acting in good faith, and within the scope of the authority conferred by this limited jurisdiction, and not falsely or colorably, making such proceedings a pretence for covering an intended scandal, are protected by law. It appears to us, that the defendant, as pastor of the church, and minister of the congregation, was acting within the scope of his authority, in reading a paper, which, it was proved had been adopted in a separate meeting of the church, and directed thus to be read.
But the ground finally relied on by the plaintiff seems to be this, that the disciplinary act of the church was completed and finished, when they passed the vote of excommunication; that the plaintiff thereby ceased to be a member of the church, or within its jurisdiction ; and that the subsequent reading of the paper, in the presence of the congregation, was an unwarranted and officious act, and proof of express malice. But we cannot take this view of the case. The decision was agreed on in church-meeting, and ordered to be promulgated by reading it before the church and congregation. The church and congregation, to some purposes, form one religious society, associated under one pastor and minister for religious improvement. The church constitutes a select body, set apart for special purposes by covenant, and at the same time forms part of the congregation. Other members of the congregation may, upon suitable application, become members of the church, and all have a common interest in the general religious welfare of each other. In many congregations, proposals for admission to the church, and actual admissions, take place before the congregation; and in all societies, the ordinance of baptism is public. One great purpose of an act of church discipline is, that it may have a salutary influence upon the whole religious body, of which the offender is a member. Under the circumstances, we consider that it was quite within the scope and order of church discipline, without proof of a *417 particular custom, to announce such an ecclesiastical censure, as it was made the duty of the defendant, by a vote of the church, to do, in the presence of the church and congregation assembled together for public worship and religious improve ment. Plaintiffs nonsuit